The case we will consider next is Viliz v. Cintas Corporation. We're going to consider the appeal on the cross appeal together. We're going to have the plaintiffs go first. Thank you, counsel. Thank you, Your Honor. Michael Rubin for the Viliz Plaintiffs. The overriding issue in these first two consolidated appeals concerns the respective roles of an arbitrator and a reviewing judge in the face of arbitration agreements and even more so arbitration awards that are seen as ambiguous. Judge Armstrong and the arbitrator both concluded that his initial award construing those agreements was itself ambiguous. The reason arbitrator Meyerson, the arbitrator selected by the parties to construe those agreements, was because he thought that the arguments were ambiguous. The reason the contract clarified the agreements the first time was because he recognized, based on a telephonic oral argument between counsel, that he had not been as clear as he intended in stating either the results or the rationale. The consequence of the trial judge taking over from the arbitrator the job that the parties had assigned to that arbitrator to construe their intent in the arbitration agreements was that we now find ourselves with 2,000 or more individual arbitrations of overtime claims in counties spread throughout the United States. Before potentially thousands of different arbitrators, when the arbitrator whom the parties selected under the AAA proceedings to construe their contracts and to enter the clause construction award, which is the first stage of the AAA procedures to determine whether the agreements even permit or preclude class arbitrations. When that arbitrator himself said that the claimants should be permitted to pursue their claims on a class action basis and where the claimants should be permitted if they are properly venued to pursue their claims on a collective basis as well. Now, the construction that the trial judge adopted was not only contrary to the arbitrator's instruction, but it was contrary to the language of the arbitration agreements. It leads to illogical results and ultimately it would lead to an unconscionable result where people are stripped of their rights to pursue their overtime claims on a class and collective basis. Now, where did she go wrong? The law is set that when there is an arbitration agreement that is ambiguous or internally inconsistent, the proper role of the judge is to, in reviewing that award, is to remand to the arbitrator for the arbitrator himself to state his intentions and his ruling to clarify the ambiguity. Here there was no final award. There was no unambiguous award based on the district judge's construction of what the arbitrator had said. What Judge Armstrong ruled in a new application of the manifest disregard principle that is contrary to Collins v. G.R. Horton, which is the most recent opinion in which two members of this panel have ruled on it, have said that the manifest disregard standard permits a judge to override an arbitrator's determination when there are inconsistencies in the arbitrator's own ruling. Whereas this court and all other courts have said that the manifest disregard standard requires a determination that the arbitrator has identified explicit, clearly controlling law and has chosen not to abide by that law. Judge Armstrong has essentially usurped the power of the arbitrator by taking it upon herself to reconcile what she perceived to be two inconsistent strands in the arbitrator's analysis. The arbitrator made clear that, in fact, there had been no inconsistencies. He explained in his two clarification orders how he had reconciled the various language of the agreements, why he had ruled as he did, but Judge Armstrong in another error, in addition to improperly applying the manifest disregard standard, erred by refusing to consider the arbitrator's own rationale and explanation for the reasons he ruled the way he did. The manifest disregard standard cannot be meaningfully applied unless the reviewing court considers why the arbitrator ruled as he or she did. Otherwise, there's no way to determine whether the arbitrator manifestly disregarded explicit controlling law. Here, Judge Armstrong plainly stated that she had an interpretation of what he ruled, what he should have ruled, and she was not going to consider either his October 13, 2006, clarification or the subsequent May 7, 2007, clarification. Rather, as she said, I will read a portion of what the arbitrator wrote in the initial decision, disregard his bottom line ruling as stated in that initial decision and in the two subsequent decisions, and then hold, through application of the functus officio doctrine, that he is not permitted to reach a different result. Two more errors spring from that. First, she misstated, as the arbitrator repeatedly explained to himself, what he had ruled. She believed he had ruled that no class or collective arbitration is ever permissible. He said that's not what he ruled. And in fact, there is no language in the agreements that preclude class or collective arbitration. And even the place of arbitration clause that Judge Armstrong relies upon is silent as to the class and collective rights of a plaintiff who is properly venue. Did Judge Armstrong say that there couldn't be class or collective arbitration if the forum selection clause of the arbitration agreement were effected? She did. She said there could be no class or collective arbitration. Each plaintiff, each claimant, must proceed individually despite the arbitrator having read the agreements in a contrary manner and despite the reconsideration clause. And that's the second point I was making where she erred. The reconsideration clause that she never taught. I guess I didn't mean it that way. I thought that she was saying you can have a class or collective. Well, certainly you can have a class or collective action in the San Francisco action, the Northern District of California, the first 102. But as to the other 1900, didn't she say you can't you have to observe the forum selection clause in the arbitration agreement? No, Your Honor. That's what the arbitrator decided, except for his footnote three. Yes. Footnote three says I'm not. Let's start first with what Judge Armstrong ruled. Judge Armstrong ruled that the arbitrator and therefore the parties were bound by the language in his July 26, 2006, ruling that said there are no class or collective arbitrations permitted. Therefore, our reading and the way the parties have briefed this, and it's certainly the way the arbitrator had read it, of the parties, I'm sorry, of Judge Armstrong's ruling, is that there can be no class or collective arbitration, even in San Francisco, even among people who are properly venued in San Francisco, which includes the 102 people who are compelled to arbitrate there and which also would include those. Judge Armstrong said when she said that, she said the portion construing, she said that she was really enforcing the award, because even though the arbitrator said that there could be the class, he had first said that the agreements precluded those procedures. I mean, it's a little baffling, but the bottom line of what she says is that portion, construing the arbitration agreements as precluding collective and class actions on the part of the 102 compelled claimants is confirmed. So she said the arbitrator precluded the class actions for the 102, and she confirmed that part of the award. The arbitrator seemed to think that he was doing the opposite. He had said nothing of the kind that he had done as Judge Baez suggested Judge Armstrong had done, which was to say the 102 could proceed in San Francisco on their own behalf and on behalf of others. Judge Armstrong, and I point you to ER 12 to 13, said, no, that is not what he ruled. I will confirm his ruling as I understand it, despite the party's dispute over what he ruled, rather than remanding to him for clarification. And then she actually ruled after that that because she had said that the 102 were not class actions, that the request to allow the 1900 to be bound by that in one way or another was moot. That's correct. And if she was wrong the first time, she's plainly wrong. The second time it is not moot. There is a reconsideration clause in several of the agreements. The arbitrator himself said in his May 7th ruling, SER 42 and Note 1, I have been precluded by Judge Armstrong from ruling the way I want, construing the agreements the way I believe they should be construed, and even deciding whether the reconsideration clause should apply. It is the arbitrator's sole authority under Basel to determine the scope of the party's agreement, and that includes to determine whether this reconsideration clause applies, should be enforced, and how it should be enforced. Judge Armstrong impermissibly stripped him of that authority by dictating to him, in a series of rulings, her initial remand ruling and then her first MDL ruling, dictating to him the result that she believed should be required based on her misreading of what he had actually ruled. Let's take a look at that. Okay. The arbitrator says, although claimants are correct. I'm sorry, which? July 27, 2006, clause construction award. Yes. Although claimants are correct that in class action litigation, every member of a class need not establish that venue would have been proper had that individual initiated litigation. I find that principle does not apply here, and that in this situation, the place of arbitration provision contained in an enforceable arbitration agreement must be given effect. Then he goes to footnote three. Yes, sir. And he says, I am expressing no opinion on another issue. That's right. So how do you get footnote three, I'm expressing no opinion, qualifying his finding, which I've just read you? Well, in the first place, it is a footnote directed to that sentence, and if you read his explanation of what he did, which is the best evidence of what he did. What she interprets as being a reconsideration and a change in her determination. And the arbitrator's determination. Now the question is. Let me explain his language. What is the scope of our review of Judge Armstrong's determination of what the arbitrator said as being either a reconsideration, impermissible, or a clarification, perhaps permissible? That's the easiest question. Your review is de novo. You are in the place of the district judge here. You are to read the arbitrator's rulings as if you were reviewing them under the manifest disregard standard. It is a legal question as to both what he meant and whether she should have permitted him to clarify if there was some concern about what he meant. Now, this language that you just read, let me place it in context. Under the AAA, when there is a class action or collective action alleged, as here, there are two stages. The first just determines whether there's anything in the agreement that prevents class or collective arbitration. The second, which is stage two, is whether a class should be certified. The text of this initial award states that all of the 102 compelled claimants may proceed to the next stage. The next stage is the actual class certification stage. He could not have said that on page 7 to 8 here, right before the language that you quoted, unless he had concluded that those 102 compelled claimants were permitted to pursue, under the agreement, class or collective arbitration. And then at the next stage, he would decide whether it's proper. We're all 102 claimants in the... San Francisco, yes. In the first case for San Franciscans? No, no. But they were there because under Continental Grain and Judge Armstrong's specific ruling on May 4, 2005, because CENTAS moved to compel arbitration in the Northern District of California, they therefore waived any venue clause they had and they were required to arbitrate there. I want to reserve my time, but I want to speak briefly before I do, to the appeal that CENTAS filed for the initial remand order, which we state in our papers is an improper appeal under 16A1D, but I want to draw the panel's attention in particular to the timely response we filed to CENTAS' motion to confirm in part and vacate in part that initial ruling by the arbitrator. Because under Western Employers, Judge Nelson's ruling, we stated all of the reasons in our brief opposing CENTAS' confirmation, well within the 90-day period, why the order as we construed it should be confirmed in part and vacated in part, why the negative portion was in manifest disregard, and we have satisfied any requirement of a timely motion to vacate under FAA Section 12, and while it is an improper appeal and while the district judge did act properly in remanding for further clarification, given her confusion about what was before her, the main argument CENTAS makes, which is that we're barred by the statute of limitations, notwithstanding the equitable tolling argument, is effectively, doesn't matter because we sufficiently preserved our rights through the brief, which has the table of contents in our supplemental excerpts at page 138 to 141, and states all of the arguments concerning the validity and forcibility of the arbitrator's ruling. I'd like to reserve the rest of my time, please. Thank you. Good morning. May it please the Court, Mark Dosker together with my colleague Joe Mekas on behalf of CENTAS Corporation. Let's address the last point first. Plaintiff's motion to vacate in part is absolutely time barred under FAA Section 12, and nothing can reopen their ability to bring it. A few points briefly to flag for the Court in that regard. The motion to vacate, say that again. Each side moved to vacate in part and to confirm in part the clause construction award. Let me stop you there. Why, then, aren't the issues before the Court as to whether to vacate or confirm the award? You asked the Court to do that. What difference does it make what they say? Well, first off, what difference it makes, Your Honor, is that they had a statute of limitations. No, no. Forget their case. What difference does it make? You have asked the Court to act on the entire award. Well, what difference it makes is, yes, what difference it makes, you mean whether there is a timely motion to vacate or not? Whether there's a timely motion by them, since you filed a motion asking the Court to deal with the entire award, to vacate part, confirm part, can't the Court then confirm whatever part it wants or vacate whatever part it wants? The test under the FAA Sections 9 and 10 is basically that the Court must confirm whatever it does not vacate. Two sides made converse motions, so we moved to vacate what they moved to confirm, and they moved to confirm what we moved to vacate. Now, it makes a difference, very important difference, in this way. If their motion to vacate was not timely, and it was not, then as to that which they seek to vacate, this Court has no choice but to confirm. You ask them to vacate part, which the Court can either confirm or vacate, and you ask them to vacate another part, which the Court can either confirm or vacate. The Court must confirm unless it must vacate, and if there's no timely motion to vacate, the Court on its own can't simply say, well, we're going to vacate that. If you ask them to confirm and it says, no, I won't confirm, what does that mean? As long as it's not vacated, it has to be confirmed by statute. So then why do you bother to ask to confirm? Some parties don't. Often it is the case that arbitral awards are not brought up to confirm. I don't want to take too much of your time on this. Briefly on the statute of limitations, United States v. Beggarly, cited on page 22 of our opening brief in the low-number appeal, equitable tolling is not permissible where it's inconsistent with the text of the relevant statute. That's the law here. Likewise, United States v. Sadler, written by Judge Nelson earlier this year, they're addressing FRAP A4, 4A, rather, 4A, and talking about the difference between jurisdictional rules in the past and now what are non-jurisdictional but inflexible claim processing rules. Certainly, like Sadler and like the case in the Supreme Court of Bowles, the fact that the other side did not meet the statute is mandatory if invoked by a party, and we certainly invoked it. You know, the other part of this problem is there may be a disagreement, or we may not know which ruling we're talking about. Well, I'm going to get to that in a minute, and my theme is going to be the award is the award is the award. There is no award but the award. The arbitrator became functus officio after he delivered it, and it is not appropriate to consider. Are there any of these cases, any of your cases, interim procedural awards like these as opposed to final awards in the middle? Yes, Stolt-Nielsen from the Southern District of New York, Your Honor. This is a final award. There's no doubt about that. It's a partial final award, which means it is final as to that part of the arbitration it addresses, the clause construction phase, and it is reviewable under Title IX, Section 16. Both sides agree with that. There's no dispute about that. Now, the point is on the statute of limitations. Excuse me a moment here. How should the doctrine of functus officio limit our consideration of the arbitrator's clarification orders? Arbitrators are not allowed to engage in reconsideration or in sort of criticizing or disrespecting, if you will, their own orders after the fact by further rumination. The only thing that changed after this award was issued was another arbitrator in another case with other counsel with other parties ruled differently, and opposing counsel brought a motion for reconsideration based solely on the fact that another arbitrator in a wholly different circumstance saw something a different way. With only that in hand and 40 percent of the claimants who actually brought the demand for arbitration did not have a reconsideration clause, and an arbitrator cannot reconsider unless the parties contractually give him or her that power. Forty percent of the parties who were bringing this demand for arbitration did not have a reconsideration clause. The arbitrator recognized that. He recognized that if he was going to reconsider, he would be in the untenable position of issuing two different awards, different ways for different parties. The point, and I'll sum up briefly on the statute of limitations, then we'll move on, is that their motion to vacate is time-barred. They acknowledge that their application to Judge Armstrong for some more briefing time only, and now I'm quoting, quote, gave notice to Sentos and the court of plaintiff's intention to move to confirm and or vacate any final award by the arbitrator, depending on what he rules and what the basis for that ruling might be. Close quote. That's excerpt of record at 909 at page 11, lines 19 to 21. As the case law makes very clear, statute of limitations is strict. The 28J letter we put in last Thursday with another opinion from the Court of Appeals in the Seventh Circuit in the Webster case shows that missing it by one day is enough. You miss it, you miss it. Clearly, they missed it here. Let's turn now, though, to some of the things that counsel said in the main theme of his appeal. If you were to decide that his motion to vacate were not time-barred, which I respectfully submit I don't think you can decide, his main criticism is the interrelationship between the judge and the arbitrator and something went awry there. Entirely false. Judge Armstrong was meticulous in saying in her, among other places, her May 5, excuse me, May 4, 2005 order, she cited Greentree v. Basil correctly and she explained, and I quote, the determination of whether the arbitration agreements at issue allow for class arbitration or not is for the arbitrator, not the court, to decide. Close quote. ER 330. They conceded, my opponents conceded in their opening brief to this court, that the district court correctly left that issue for the arbitrator to decide. That is at their brief, page 58, footnote 13. So since they acknowledged that the district court correctly reserved the issue, they can't very well claim error now. Judge Armstrong remanded for clarification as to one issue and one issue only. And she says that in her December 5, 2006 remand order. And that one issue and one issue only was whether the arbitrator thought that she should be reviewing the award, the July 27, 2006 award, and the October 13, 2006 order, where the judge, the arbitrator, denied their motion for reconsideration and gave some more thoughts about his ruling. That's the only thing she said she needed any clarification on. In May, May 2, 2007, when he issued his third order in response to her, he basically quoted back, some of what he'd said before and added nothing new, and never said, though, he never said, you should be reviewing my October 13 order as well as the award. He never said that. The award is the award. And as well it should be. It is clear that he ruled in the award that class and collective or collective arbitration are not permitted. Counsel misstated the standard when he was up here a minute ago. Well, no way. Let's see. What is it that the arbitrator said in your view? He said, in my view, and not just my view, in the text of his award, which is what matters, he said that, and I'm quoting from ER-242. There's several copies in the record, but one convenient one is at ER-242. This is the award. He says, quote, Although an arbitration agreement that is ambiguous would ordinarily be construed against its drafter, Cintas, I conclude that the provision in each arbitration agreement that any arbitration proceeding be held in the location of each SSR's, that's the person's, employment with Cintas cannot be reconciled with any claimed ambiguity or claimant's assertion that the individual arbitration agreements permit a class or collective arbitration. Close quote. He found this language was clear and unequivocal. Those are his words at page ER-243, line 7. He distinguished another case called Sidhu that he had Are you talking about the award of July 27th? Yes, sir. And what page? All right.  Page 4, line 7, clear and unequivocal. Page 6, he says, Accordingly, based on the claimants who were named in the initial demand and those That's where he manifestly disregarded it. Let's turn around. Okay, but don't turn around what he did. He did say later in the award that these 102 claimants were entitled to arbitrate in this proceeding. That's where he made the error. Maybe he went wrong, but we're trying to see what he said. Okay. He said the 102 are entitled to participate in this arbitration. He said they could proceed to the next step in this arbitration. And that's where he went wrong. Okay. He doesn't say that, but the structure of the rules is such that that would be the next step. I'm just trying to find out what he said, not whether he's right or wrong. So in his award, he said that the 102 could participate in this arbitration that he was conducting. And then he said, as to the 1900, I'm not expressing an opinion as to whether they're bound by a class determination. Now, he said they can't be parties in the arbitration. They can't be in a collective arbitration, but that they may be subject to the class determination. But he's already said in the main part of his ruling, in interpreting the contracts, which is what he must do, that these contracts do not permit a class of collective arbitration. And the standard is, under Supplementary Rule 3 of the AAA, the standard is not what counsel said, which is whether there's something he said, whether there's something that precludes it. Just the opposite. The standard is whether the arbitration agreements permit. And as in the Stolt-Nielsen case from the Southern District of New York, so too in this case. And in that case, there was one of the most distinguished panel of arbitrators in the United States was on that case and was so referred to in the opinion. And those three made the same error that was made here in this way. Well, I've got to ask you first, because there does seem to be a certain inconsistency in his first award. Yes. The second part manifestly disregards the first. Whatever. You keep wanting to talk about which is right, and I keep wanting to talk about what the award says and whether it's a consistent award and whether it requires clarification. He may be wrong. We can get to that later. We're now just on procedure. And it seems that in his first award there were certain inconsistencies, which he concedes and says it requires clarification. And that's what he does then in the award dated, what is it, November 13th, 06. October 13th. And it's not an award. It's an order. There is a difference. Okay. It's an order clarifying his first award. And then he says, now I want to explain that what I was saying was they can't participate in a collective arbitration as parties, but there is a difference between a class arbitration and a collective arbitration. He said in his award he can't do either. And as Judge Armstrong correctly points out, the case law does not allow an arbitrator to go back and change his award based on second thoughts after the fact. That would gut the functus officio rule. Okay. Well, we'll get to the functus officio if we have time. So what he said in the second order was, although claimants have requested I reconsider it, I believe a clarification is necessary, not a reconsideration. And it seems to me from even what you say, that the first award has inconsistencies in it, that he's properly clarifying it. I'm not asking you to say that his clarification is correct as a matter of law. I'm talking about procedurally. He's not allowed to. He can't go back and revisit it. He can't. And at that point he had not yet been remanded for clarification. That didn't happen until December. And the only thing Judge Armstrong found unclear, and she recited with great faith to the text of his award, the only thing she found unclear was whether he, the arbitrator, thought that she should look only at his award or his award and the October 13, 2006 order. When given a chance to respond to that on May 2nd, he did not say. That might be the only thing she found unclear, but we're sitting here now reviewing this de novo, and I find it unclear, and it seems to me that you said. No, I didn't find it unclear at all. You found it unclear. I feel like I'm trying to backtrack. He said you found inconsistencies in the first order. I find him trying to backtrack later. I find him manifestly disregarding in the second part of his award what he did in the first part. And as I was saying, in Stolt-Nielsen, Judge Rakoff, I believe, in the Southern District of New York, very wisely pointed out that what else is being manifestly disregarded here is basic black-letter contract law. The intent of the parties entering into these contracts was back at the time they entered in. It could not have changed years later when Judge Armstrong, as to the first 102 people, applying a 1941 Ninth Circuit opinion in a way that Judge Patel had then just recently newly applied it, did something, namely said my own power, my power as district judge, as to these first 102 or 56, it was later stipulated for 102 people, is limited to making them arbitrate in this district. But that does not mean that their contracts changed. That does not mean that the arbitrator was somehow relieved of his obligation to be faithful to those contracts. And just as the Stolt-Nielsen court correctly held, to do otherwise is to manifestly disregard that black-letter contract law. There was New York contract law at the last few pages of that opinion. But in each of the states where this is so, who are these people from? Many different states. In each of the states where this is so, the law is that the contract terms have to be, the intent has to be determined at the time, and the intent was correctly determined by this arbitrator in the first part of his award, that they do not permit class or collective proceedings, but then he manifestly disregarded that in the last little bit of his award that Your Honor was just talking about. Now, the ‑‑ He manifestly disregarded it by allowing the 102 to remain in San Francisco, I mean in northern ‑‑ Remain in front of him. Remember, there's a difference. Just because the district court said that you must arbitrate in this geographic area does not mean you get to arbitrate together in front of one arbitrator. And this arbitrator had just not more than a couple of pages before said the agreements are unambiguous, they are unequivocal, they are clear, and they do not permit class or collective proceedings. Then why did she refer it to one arbitrator? Why didn't she refer it to 143 or 201 or whatever it is? Why didn't she do that? Yeah. Well, for starters, at the moment that that happened, there weren't any other arbitrators appointed. I mean, she would have to ‑‑ she did in her September 5, 2007 order, which is what's on appeal here in 16‑645, she did in the sense that she vacated that portion of his award. So if this order is affirmed, as it fully should be, if this order is affirmed, then what will happen after that is the AAA will have to dismiss the existing proceeding and their procedures would require that anyone wishing to proceed will go and proceed individually or on such other basis as they might attempt. When she referred this to an arbitrator, what did she do? She ‑‑ the counsel attempted to bring a nationwide class arbitration in San Francisco in defiance of what had already been found to be enforceable binding arbitration agreements which have in them place of arbitration terms that say last county where you worked. Remember, the terms of an arbitration agreement are jurisdictional. I think this is what she did. So what I'm saying, Your Honor, what I'm saying, Your Honor, is that then as arbitrator Meyerson did what he did, it came back to her on ‑‑ Wasn't there an order referring something to an arbitrator by the district court? There was an order compelling the first 56 people, and later stipulated to be 102, to arbitration, period. That was sought by you. Sorry? That was sought by you. Yes, as to those first group of people. Then when we realized that the judge was going to take what we thought was a very unexpected turn based on what we thought was an ambiguous 1941 Court of Appeals case, as soon as we heard that the other side, and this is all on the record and the briefs, as soon as we heard that the other side was going to try and get everyone to arbitrate on a class basis in San Francisco, we said, wait a minute, we reserve our rights, and then we acted on the right to move to stay only under Section 3 of the FAA as to the other 1900, and then to petition to compel in each of the district courts encompassing the county where each person last worked. That's the 70 petitions that we'll hear in the next appeal in a few minutes. And as to those 70 petitions, your petition is that not, let's say, in San Mateo County, that everybody join the class action or collective action in San Mateo County who works in San Mateo. You want every one of those persons to bring a small claims court action in San Mateo. We have never had to take that position, nor do I have to take it now, because the test under Supplemental Rule 3, Supplementary Rule 3, is whether it permits. The case we were presented with was a demand for nationwide class action. We were not presented, for example, with a demand for, I'll pick a large county, we were not presented with a demand for all people who worked in Los Angeles County. We have not taken the position that goes that far, nor need we, nor need we. So I see the time is, the light is red. Well, we'll see you again, I suspect, soon. I think there's another item on the calendar, John. Okay. Thank you. Thank you. Your Honor, this Court has spoken in the Teamsters Local 631 v. Silver State case, which we cite, following the Fifth Circuit. This Court said that the arbitrator in that case, in his clarification, Here, the arbitrator concluded that his initial award was ambiguous, based on the fact that the parties were construing it in two different ways. Judge Armstrong, in her initial remand order, concluded that there was ambiguity, which is why she remanded for his clarification.  that what he had ruled is what is stated on page eight of his initial order. In summary, he's summing up, this is his bottom line, there are 102 SSRs, plaintiffs, who are claimants in an arbitration in the Northern District of California. Whether that arbitration may be found to be a class or collective arbitration will await the next stage of these proceedings. That could only mean these 102 are permitted to go forward to the class certification stage, and the arbitrator has consistently said that is what, in fact, what he meant. Silver State says that he has the power, even under the functus officio doctrine, which is what Silver State was, to issue that clarification, to clarify the perceived inconsistencies, to explain what he had intended and why, and the district court erred by rejecting any consideration of his reasoning. What he said his bottom line was, in imposing her own construction on the agreements. Sintas now tells us that it is not taking the position, and it has never had to take the position in this litigation, that everyone must proceed individually. That's not true, but if it were true, then we win as to the 102 compelled claimants who are properly in San Francisco, as everyone concedes, who can pursue claims on their own behalf and on behalf of all others similarly situated. That brings into the San Francisco, if Sintas is not asserting that they must proceed individually, if it is rejecting judge and not insisting that this court affirm judge Armstrong's determination that they must proceed individually, then we're fine. We've got an arbitration in San Francisco with 102 named claimants who can proceed on their own behalf collectively, who can proceed on their own behalf and on behalf of everyone similarly situated on a class action basis. You should still remand, because there is still the second problem with the arbitrator's determination where judge Armstrong had her thumb on the scale, and he said that because of what she had ruled earlier caused him to misstate and not reach his correct understanding. He should at least be allowed to exercise that reconsideration power that he said in two of his decisions the judge precluded him from considering, because that's part of the contract. And part of his role as the arbiter of the contract, the construer of the contract, is to determine whether the reconsideration clause, which is an exception to functus officio. Functus officio is just the default rule where there is no reconsideration language, parties can contract around it. Where the parties have contracted around it, then the arbitrator has the authority to determine for himself in the first instance whether he should reconsider. And if he does reconsider, what the scope of that reconsideration is and what the proper result should be. The reason Sintas is fighting like this is because he has stated quite clearly what the result should be. And the result is the result that is consistent with the language, with the unconscionability principles becoming clearer and clearer in cases that question whether even explicit class action prohibitions are permitted, which is that people should be permitted to go at least to stage two to see if they can meet the burden under Rule 23 of showing the class certification is appropriate. There is nothing in the contract that says individual arbitrations are required. The very most, the very strongest argument Sintas has ever had was how you initiate, a place of arbitration that says where some people may initiate, where a venue may be, but it doesn't say if you're properly venued whether you can pursue class claims or collective claims. And the law is very clear that if the named representatives are properly venued, in court as well as in arbitration, they can bring their claims collectively on a class basis for everyone similarly situated, and those other people don't have to independently satisfy venue requirements. That's the law. It wasn't manifestly disregarded by the arbitrator. Judge Armstrong got it wrong, and we're now many years after the fact in a very convoluted procedural mess because she didn't let him do what the parties had contracted for, which is to construe the agreement for himself, including the reconsideration clause. Thank you, counsel. Next case is...
judges: Nelson, Reinhardt, Bea